UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD H. MUTCH,

    Petitioner,

v.

RICHARD MORGAN,

    Respondent.

CASE NO. C99-1476P

REPORT & RECOMMENDATION

## INTRODUCTION

Petitioner Richard Mutch has filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2254. He raises nine claims challenging his 1994 conviction for second degree rape and kidnapping. After reviewing the petition and the balance of the record, the court concludes that seven of the claims are unexhausted and the remaining two lack merit. Accordingly, the petition should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Washington Court of Appeals summarized the facts in this case as follows:

> In January 1994, Mutch met J.L. at an Amway meeting. He approached her and said he was interested in selling Amway products with her. That evening they met at J.L.'s house. After discussing their Amway partnership, Mutch proposed marriage, J.L. accepted and they engaged in consensual sexual intercourse. The next day, Mutch returned and J.L. told him that she was no longer interested in marrying him but would still sell Amway products with him.
>
> The two continued to attend meetings and see each other for several weeks, but had no sexual relations again until February 2. On that day, they watched videos at J.L.'s house with her daughter. After the videos were over, J.L.

REPORT & RECOMMENDATION – PAGE 1

asked Mutch to leave, but he refused. Reluctantly, J.L. told him that she was going to sleep in her daughter's room and that he would have to sleep in the living room. Soon after they all went to bed, Mutch came into the room where J.L. was sleeping and told her that he wanted to talk to her. She told him that she was too tired to talk and that they could talk the next morning. Mutch hit her in the face, and she slapped him back. She went to the living room with him where he threatened her and again hit her. Mutch then told J.L. to take off her clothes. They engaged in multiple acts of sexual intercourse and oral sex. Eventually, Mutch got her a glass of water and allowed her to rest.

The next morning, while Mutch was sleeping, J.L. put a note in her daughter's boot and told her to give it to her aunt when she picked her up for school. The note said that Mutch was going to kill J.L. and instructed the aunt to call the police. After Mutch woke up, they again had sexual intercourse at Mutch's demand. After her daughter left for school, J.L. and Mutch went to the courthouse for a marriage license. While Mutch was filling out his application, J.L. handed the clerk a note which said Mutch was threatening her and that she needed help. The clerk called the sheriff who arrested Mutch.

After Mutch's arrest, J.L. went to the emergency room for an examination. Doctors noted several abrasions on her face, bruises on her neck, and scratches on her back. Mutch was charged with five counts of first degree rape and one count of second degree kidnapping. After a trial, the jury convicted him of second degree rape and kidnapping. The trial court sentenced him to life without the possibility of parole under Washington's persistent offender statute, finding that he had previous convictions for robbery in California and a federal bank robbery conviction.

*Washington v. Mutch*, 87 Wash. App. 433, 434-36 (1997), *rev. denied*, 134 Wash. 2d 1016 (1998) (Dkt. #32, Ex. 16 at 2-3).

Petitioner appealed to the Washington Court of Appeals and filed a *pro se* brief in addition to the brief filed by counsel. (*Id*., Ex. 2, 3). The Washington Court of Appeals affirmed petitioner's judgment and sentence. (*Id*., Ex. 16). Petitioner then filed a petition for discretionary review in the Washington Supreme Court. (*Id*., Ex. 19). The Washington Supreme Court denied the petition, thereby terminating the direct review of petitioner's conviction.[1] (*Id*., Ex. 20).

Petitioner filed his first federal habeas petition on July 24, 1995. (Dkt. #2 in Case No.

---

[1] While petitioner's direct appeal was pending, he filed several personal restraint petitions and motions in state court. (*Id*., Ex. 22-39). As this court previously noted, these motions and petitions presented essentially two issues: (1) whether Whatcom County authorities were interfering with petitioner's right to file an appeal; and (2) whether petitioner should be held in the Whatcom County Jail pending his direct appeal. (Dkt. #56 at 2). The state court dismissed all of these collateral challenges prior to the resolution of petitioner's direct appeal. (*Id*.)

REPORT & RECOMMENDATION – PAGE 2

C95-1017C). The petition was dismissed without prejudice because petitioner's state court appeal was still pending. (Dkt. #17 in Case No. C95-1017C).

Petitioner filed his second habeas petition – the instant petition – in federal court on October 7, 1999. (Dkt. #3). Respondent filed an answer, along with the state court record, on January 21, 2000. (Dkt. #31, 32). Consideration of the petition was delayed while petitioner appealed an Order of the court to the Ninth Circuit Court of Appeals. (Dkt. #36). After the Ninth Circuit denied petitioner a certificate of appealability (Dkt. #51), United States Magistrate Judge John L. Weinberg issued a Report and Recommendation, recommending that the petition be dismissed as untimely. (Dkt. #56). The court adopted the Report and Recommendation on June 8, 2001, and dismissed the petition. (Dkt. #68).

Petitioner appealed the dismissal to the Ninth Circuit. (Dkt. #70). The court of appeals sent the case back to this court to determine whether the federal statute of limitations had been tolled by petitioner's filing of a motion in the state trial court. *See Mutch v. Morgan*, 2003 WL 21751717, Unpublished Memorandum Disposition (9th Cir., July 24, 2003). On July 7, 2004, this court found that the statute had been tolled and that petitioner's habeas petition was therefore timely. (Dkt. #96). The matter was then referred to the undersigned United States Magistrate Judge on September 23, 2004. (Dkt. #98).

Because respondent's original answer had addressed only the timeliness of the petition, the court directed respondent to file a second answer addressing the merits of petitioner's claims. Respondent filed the second answer on December 17, 2004. (Dkt. #100). Petitioner filed a "motion to amend/rebuttal" on January 10, 2005. (Dkt. #103). Although petitioner called the document a "motion to amend," the pleading did not propose any discernible amendments to petitioner's claims. Rather, it contained a response to several arguments that respondent had made in his answer. Respondent filed a response to petitioner's motion and requested that the court strike the motion because it contained "extremely abusive language, demonstrating a total lack of respect for this Court and opposing counsel." (Dkt. #102 at 3).

REPORT & RECOMMENDATION – PAGE 3

Before considering respondent's request that petitioner's motion be stricken, the court discovered that the original case file had been misplaced. Accordingly, the court directed the parties to resubmit documents in order to reconstitute the file. (Dkt. #104). Respondent resubmitted documents on February 23, 2005. (Dkt. #105).

The court then considered respondent's request to strike petitioner's motion to amend. After describing the numerous instances of abusive and frequently anti-Semitic language in petitioner's motion, the court reviewed the pertinent history of the case: In a similar situation, Magistrate Judge John L. Weinberg had stricken an earlier pleading filed by petitioner that contained improper language. After striking the offensive pleading, Judge Weinberg had warned petitioner "that the Court will not tolerate in future filings the type of disparaging remarks directed to the Court and/or opposing counsel, contained in almost every filing to date. The remarks are improper and unwarranted and *will*, if they continue, result in the imposition of sanctions against petitioner which may include dismissal of this action." (Dkt. #48 at 2) (emphasis in original).

The court then found that petitioner's motion to amend failed to comply with Judge Weinberg's Order, and also violated General Rule 9, which provides that litigation in this district "must be free from prejudice and bias in any form." Local Rule GR 9. Accordingly, the court ordered that the motion be stricken, and gave petitioner additional time to file a response that complied "with the rules of this court and the previous Orders entered in this case." (Dkt. #107 at 3).

On April 6, 2005, petitioner filed a response to the court's Order. (Dkt. #108). In the response, petitioner does not present any argument regarding his habeas petition. Rather, he asserts, without citing any legal authority, that he is free to make abusive remarks because General Rule 9 applies only to attorneys. In addition, petitioner argues that the First Amendment protects his freedom of expression. (*Id*. at 2-4).

The court notes that General Rule 9 applies generally to "[l]itigation, inside and outside

REPORT & RECOMMENDATION – PAGE 4

the courtroom," and does not limit its guiding principle of bias-free conduct to attorneys. The court further notes that the Supreme Court has commented that "if our courts are to remain what the Founders intended, the citadels of justice, their proceedings cannot and must not be infected with . . . scurrilous, abusive language and conduct . . . ." *Illinois v. Allen*, 397 U.S. 337, 347 (1970). Because petitioner's response to the court's Order displays a continuing lack of respect for these proceedings, the court recommends that the response be stricken. Petitioner's habeas petition is now ready for review.

## GROUNDS FOR RELIEF

Petitioner raises the following nine grounds for relief in his habeas petition:

1. Fraud was committed when petitioner was not informed [by any of the three principals][2] as to his absolute constitutional right to be first indicted by a "grand jury" before any prosecutorial jurisdiction could attach.

2. Prosecutorial jurisdiction never attached as mandated by the Washington State Constitution, Art. IV, § and Art. I, § 29.

3. Unconstitutional side bars; Mandatory duty of Court.

4. The United States Supreme Court had validated petitioner's constitutional right (as early as 1988) to cross-examine the alleged victim in regards to her four prior allegations of rape and/or sexual assault against four separate persons: *Olden v. Kentucky*, 109 S. Ct. 480.

5. The unconstitutional "binding" of petitioner, during a jury trial, was cunningly enforced as a means to portray petitioner, to the jurors, as being a dangerous maniac, and certainly guilty of the incredulous accusations.

6. Washington Pattern Jury Instruction #1.02 is a knowing act of deceit, employed to control juries and prevent them of knowing their absolute right to jury "nullification."

7. The Prosecutor's application of RCW 9.94A.392 [finding and intent] is not in accord with the Supreme Court's holdings in regards to legislative intent, and violates the U.S. Constitution's guarantee of "equal protection" of the law.

8. Republican Form of Government, USC Art. IV, § 4.

9. Does a criminal defendant have a constitutional right to elect self-representation on direct appeal from a judgment of conviction?

(Dkt. #3 at 2-14; Dkt. #6 at 1).

## DISCUSSION

---

[2] The use of brackets and the language contained therein is the petitioner's.

REPORT & RECOMMENDATION – PAGE 5

Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d) (emphasis added). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

The Supreme Court has further refined the meaning of the phrase "unreasonable application." In *Lockyer v. Andrade,* 538 U.S. 63 (2003), the Supreme Court corrected an earlier interpretation by the Ninth Circuit and explained that the phrase requires federal courts to give even greater deference to state court decisions than if the standard were "clearly erroneous."

> The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness. **It is not enough that a federal habeas court, in its "independent review of the legal question" is left with a "firm conviction" that the state court was "erroneous."** . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. **Rather, that application must be objectively unreasonable**.

538 U.S. at 68-69 (emphasis added; citations omitted). Thus, a state court's decision may be overturned only if its application of federal law is more than clearly erroneous; the decision must be "objectively unreasonable." 538 U.S. at 69.

/

Grounds for Relief #'s 1, 2, 3, 5, 6, 7, 8

REPORT & RECOMMENDATION – PAGE 6

Respondent argues at the outset that petitioner's grounds for relief #'s 1, 2, 3, 5, 6, 7, and 8 are unexhausted because petitioner failed to properly raise the claims in state court. The exhaustion doctrine has long been recognized as "one of the pillars of federal habeas corpus jurisprudence." *Calderon v. United States Dist. Ct. (Taylor)*, 134 F.3d 981, 984 (9TH Cir.) (citations omitted), *cert. denied*, 525 U.S. 920 (1998). Underlying the exhaustion requirement is the principle that, as a matter of comity, state courts must be afforded "the first opportunity to remedy a constitutional violation." *Sweet v. Cupp*, 640 F.2d 233, 236 (9TH Cir. 1981).

In addition, petitioners must not only present state courts with the *first* opportunity to remedy a constitutional violation, but they must also afford the state courts a *fair* opportunity. *Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. *Harless*, 459 U.S. at 6. "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Further, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* at 163. Exhaustion demands more than a mere citation to a general constitutional provision, detached from any articulation of the underlying federal legal theory. *Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2005).

Finally, a petitioner must raise in the state court all claims that can be raised there, even if the state court's review of such claims is purely discretionary. *See O'Sullivan v. Boerkel*, 526 U.S. 838, 841-47 (1999). In other words, a petitioner must invoke one complete round of a state's established appellate review process, including discretionary review in a state court of last resort, before presenting their claims to a federal court in a habeas petition. *Id.* at 842-44. Thus, in Washington state, a petitioner must seek discretionary review of a claim by the Washington Supreme Court in order to properly exhaust the claim and later present it in federal court for

REPORT & RECOMMENDATION – PAGE 7

habeas review.

Here, a review of the state court record reveals that petitioner failed to present grounds for relief #'s 1, 2, 5, 6, and 8 in any form to the Washington Supreme Court. (Dkt. #32, Ex. 19). Further, although petitioner presented grounds for relief #'s 3 and 7, he did so as matters of state law and did not present them as federal claims. (*Id*. at 3-4, 7). On the last page of his motion for discretionary review, filed in the Washington Supreme Court, petitioner referred in passing to "Procedural Due Process," and "Equal Protection of the Law." (*Id*. at 8). But "merely mentioning broad constitutional principles in passing does not suffice to exhaust federal claims." *Fields v. Waddington*, 401 F. 3d 1018, 1022 (9th Cir. 2005). Thus, petitioner's grounds for relief #'s 1, 2, 3, 5, 6, 7, and 8, are unexhausted.

In addition, respondent argues that petitioner is now procedurally barred from raising these unexhausted claims in state court. Petitioner's conviction became final on April 9, 1998. (Dkt. #32, Ex. 21). Washington law permits filing a state habeas petition, or "personal restraint petition," for one year after a conviction becomes final. *See* RCW § 10.73.090(1). Thus, petitioner had until April 10, 1999 to file a personal restraint petition in state court. Because six years have elapsed since that deadline, petitioner is now procedurally barred from raising these claims in state court, and, consequently, he cannot satisfy the exhaustion requirement. The claims are therefore barred from habeas review. *See* 28 U.S.C. § 2254(b).

When, as here, a petitioner has procedurally defaulted on a claim in state court, the petitioner "may excuse the default and obtain federal review of his constitutional claims only by showing cause and prejudice, or by demonstrating that the failure to consider the claims will result in a 'fundamental miscarriage of justice.'" *Noltie v. Peterson,* 9 F.3d 802, 806 (9th Cir. 1993) (*citing Coleman v. Thompson,* 501 U.S. 722 (1991)). Petitioner has failed to show that

REPORT & RECOMMENDATION – PAGE 8

"cause and prejudice" exist excusing his default on the unexhausted claims. Nor has he shown that failure to consider the claims will result in a miscarriage of justice. Accordingly, petitioner's grounds for relief #'s 1, 2, 3, 5, 6, 7, and 8 are barred from federal habeas review and should be denied.

The court will proceed to address the merits of the two grounds for relief that petitioner did properly exhaust: his fourth and his ninth grounds for relief.

Petitioner's Fourth Ground for Relief: Right of Confrontation

Petitioner argues in his fourth ground for relief that the state court unreasonably applied federal law in upholding the trial court's exclusion of evidence. Specifically, petitioner contends that the jury should have been permitted to hear evidence that on four prior occasions, the victim allegedly falsely accused others of abusing her sexually. The trial court excluded such evidence as irrelevant, and the Washington Court of Appeals affirmed that ruling, agreeing that the evidence had little evidence and further finding that "what limited relevance it had was outweighed by the possibility of prejudice." (Dkt. #32, Ex. 16 at 9).

The right to confront witnesses, guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution, includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying. *Davis v. Alaska*, 415 U.S. 308, 316 (1973). This right is not unlimited, however. The trial judge has wide discretion in limiting the scope and extent of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). In order to show a constitutional violation, petitioner must show that the trial judge (1) restricted cross-examination in an area of critical importance; and (2) the denial of cross-examination was prejudicial. *Id.* at 681-84. A federal habeas court will rarely find a constitutional violation if the defendant was allowed to cross examine a witness at length and

REPORT & RECOMMENDATION – PAGE 9

was restricted solely on a collateral matter. *Bright v. Shimoda*, 819 F.2d 227, 229 (9th Cir. 1987).

Here, petitioner sought at trial to cross examine the victim about accusations of sexual abuse that she allegedly made against three family members and her former husband. (Dkt. #32, Ex. 16 at 8). Petitioner argued that these accusations were false and that they were therefore relevant to the victim's credibility. (*Id*. at 9). However, petitioner apparently did not specify the nature of these other incidents, "[n]or did he argue that there were factual similarities between those incidents and the conduct charged here." (*Id*.)

In a similar case, the Ninth Circuit considered whether a habeas petitioner's right to confront witnesses had been violated when a state trial court did not allow the petitioner to question the complaining witness about an attempted rape accusation she previously had made against another person. *See Hughes v. Raines*, 641 F.2d 790 (9th Cir. 1981). In order to determine whether there had been a constitutional violation, the court focused on "the probative effect of the proposed cross-examination." *Id.* at 792. First, the court examined whether "it could be shown convincingly that the other charge was false." *Id.* at 792. The court found that this was "very doubtful." *Id.* Moreover, the court continued, even if the charge of a prior rape were shown to be false, the evidence of the prior accusation was not relevant because the two incidents were not similar. The court therefore concluded that the proposed testimony had little probative value and that habeas relief was not warranted. (*Id*.)

Similarly, here, petitioner fails to demonstrate that the prior accusations allegedly made by the victim had much probative value. He does not show that the accusations were false nor does he show that they were similar to the incident for which he was convicted. As the state appellate court put it, "[petitioner] nowhere alleged that consent was at issue in the other

REPORT & RECOMMENDATION – PAGE 10

incidents. Consent was the only issue at his trial. Previous claims of sexual assault where consent was not the primary issue are not relevant to show [the victim] had a pattern of having consensual sex and later reporting it as rape." (Dkt. #32, Ex. 16 at 9).

Thus, petitioner has failed to show on habeas review that the trial judge either restricted cross-examination in an area of critical importance or that the denial of cross-examination was prejudicial. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681-84 (1986). The state court's decision was therefore not objectively unreasonable and petitioner's fourth ground for relief should be denied.[3]

### Petitioner's Ninth Ground for Relief: Self-Representation on Appeal

In his ninth ground for relief, petitioner argues that the state court violated his constitutional right to represent himself, articulated by the Supreme Court in *Faretta v. California*, 422 U.S. 806 (1975), by requiring him to have "standby" counsel on appeal. (Dkt. #6). Petitioner amended his original habeas petition to include this claim, after he realized that the Supreme Court had granted *certiorari* in a case to determine whether the right articulated in *Faretta* extended to self-representation on appeal. *See Martinez v. Court of Appeal of California*, 528 U.S. 152 (2000).

However, contrary to petitioner's assertion, the Supreme Court concluded in *Martinez* "that neither the holding nor the reasoning in *Faretta* requires [a state] to recognize a

---

[3] Petitioner's reliance on *Olden v. Kentucky*, 488 U.S. 227 (1988) (per curiam), is misplaced because the facts of that case are distinguishable. In *Olden*, petitioner's theory of the case was that he and the complaining witness had had consensual sex but that she falsely accused him of rape in order to protect her relationship with another man with whom she was living. *Id.* at 230. In order to demonstrate the complaining witness's motive to lie, it was crucial, petitioner contended, that he be allowed to introduce evidence – apparently undisputed – that she lived with this other man. The Supreme Court agreed and held that the trial court's refusal to permit petitioner to cross-examine the complainant regarding her cohabitation violated the Sixth Amendment. *Id.*

REPORT & RECOMMENDATION – PAGE 11

constitutional right to self-representation on direct appeal from a criminal conviction." *Id.* at 163. Thus, the state court here did not violate clearly established federal law in denying petitioner the right to proceed without counsel on appeal. In addition, the court notes that the state appellate court did permit petitioner to file a *pro se* brief and the court considered the issues he raised. (*Id.*, Ex. 16 at 12-14). Consequently, it does not appear that petitioner suffered any prejudice by having counsel represent him on appeal. In sum, petitioner's ninth and final ground for relief should be denied.

## CONCLUSION

For the foregoing reasons, the court recommends that petitioner's habeas petition be denied. A proposed Order accompanies this Report and Recommendation.

DATED this 5th day of May, 2005.

                                                     /s/ M. J. Benton
                                           MONICA J. BENTON
                                           United States Magistrate Judge